■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS MORTILLARO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Moskowitz, J.), rendered April 26, 1984, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered, that the judgment is affirmed.

The evidence adduced at trial was legally and factually sufficient to support the jury's verdict, and the verdict was not against the weight of the evidence. The defendant argues that several errors committed by the trial court were prejudicial to him and that a new trial is therefore necessary. Considering that "[e]rrors are almost inevitable in any trial" *(People v Kingston,* 8 NY2d 384, 387), we find that the defendant's trial in this case was fundamentally fair, that it was, in fact, as error free as can be reasonably expected, and that the one error which did occur was of an extremely minor nature so as to be completely harmless *(People v Crimmins,* 36 NY2d 230; *People v Kingston, supra).*

The defendant's first argument on appeal is that the court erred in allowing the prosecutor to cross-examine him with respect to certain inconsistencies which existed between his trial testimony and the substance of certain statements which he had made to an Assistant District Attorney and to the police. The defendant argues that the use of his pretrial statements in order to impeach the credibility of his trial testimony constituted a denial of due process, since those statements had been extracted from him through the use of undue physical or psychological coercion *(see,* CPL 60.45; *New Jersey v Portash,* 440 US 450; *Mincey v Arizona,* 437 US 385; *People v Maerling,* 64 NY2d 134, 140; *People v Walker,* 110 AD2d 730, 732, *affd* 67 NY2d 776). However, we are in full agreement with the Supreme Court that the defendant's statements were not involuntary in this sense.

We do not credit the defendant's hearing testimony to the effect that he believed that, after his arrest, he would be released from custody only if he agreed to make a statement. The transcript of the defendant's statement to the Assistant District Attorney indicates that he expected to be arraigned the following morning, whether he made a statement or not, and we find no reliable evidence that any agent of the State told the defendant that he would be released if he made a statement. The defendant's statements cannot be deemed the product of psychological coercion on this, or any other, basis. Any suggestion that the defendant's statements were involun-

tary would be particularly ill founded in light of the fact that the defendant produced an expert witness at the *Huntley* hearing, who testified that at the time of his statements the defendant was "bursting with desire to talk", and had a "tremendous desire to talk".

The defendant next argues that the trial court erred in precluding defense counsel, on redirect examination, from inquiring of the defendant as to whether he had been advised by an attorney that he could obtain a divorce from his wife (the victim) without her consent. The defendant argues that such testimony would have related to his alleged motive to commit this murder. Assuming that this ruling constituted error, we conclude that it is one of the "sheerest technicality" which, in light of the "weight and * * * nature of the other proof" may be considered harmless *(People v Crimmins,* 36 NY2d 230, 241). Any minimal prejudice which might have resulted from that error would have been completely neutralized when the defense counsel commented in summation as follows: *"We know, Ladies and Gentlemen, that you don't need anybody's permission to commence a divorce proceeding.* You don't need their permission. You might not win, you might not be successful without their help. It might be easier if they consented. But, so what. You don't need anybody's permission. If you want to divorce your wife, you start a summons. You start an action, and you try and divorce her. You don't need her permission". His attorney having made this argument to the jury as though evidence of the availability of nonconsensual divorces had been introduced, the defendant may not now argue that the trial court erred in failing to permit the introduction of just that sort of evidence.

The defendant also argues that the trial court erred in denying the defense counsel's motion to reopen his summation. We conclude that the trial court did not err in this respect.

The defense counsel sought to reopen his summation in order to respond to certain remarks made by the prosecutor, who, in his summation, had called upon the jury to compare the design of a pair of bloodied sneakers, which had been shown to belong to the defendant, with an imprint which had been left on a bloody pillowcase found at the scene of the murder. Both of these items had been previously introduced into evidence. There was also expert testimony from which it could easily be inferred that the blood stains on the defendant's sneakers, as well as the blood stains on the pillowcase, were, in fact, formed by the blood of the victim. The prose-

cutor was fully entitled under these circumstances to urge the jury to compare the design of the defendant's sneakers with the imprint left upon the pillowcase, since no expert testimony was needed in order to establish that which would be evident to any lay observer, namely, whether, and to what extent, the two things matched (see generally, People v Cronin, 60 NY2d 430, 432).

The defendant's trial attorney claimed that he had refrained from commenting on the evidentiary value of the apparent match between the defendant's sneakers and the impression left upon the pillowcase for fear of "opening the door" so as to allow the prosecutor to delve into this area. Counsel was evidently under the mistaken belief that the court had precluded inquiry or comment in this area when, during the testimony of a police officer, it ruled that a police officer could not testify as to his conclusion that the impression on the pillowcase was, in fact, a sneaker print. Such a ruling does not involve a determination as to whether comment on the apparent match of the sneakers to the pillowcase imprint would be allowed in summation, and thus the defendant may not now claim to have been surprised by the prosecutor's remarks. Considering that the decision whether to vary the order of a jury trial is a discretionary one (see, e.g., People v Washington, 71 NY2d 916), we conclude that the court did not err as a matter of law in denying the defense counsel's motion to reopen his summation, nor do we find, under these circumstances, that the trial court's exercise of its discretion was improvident.

We also find that any misconduct which may have been committed by the prosecutor during his summation was not of sufficient magnitude to warrant a new trial (cf., People v Roopchand, 107 AD2d 35, affd 65 NY2d 837).

Finally, we find that the sentence imposed was not excessive under the circumstances of this case. Bracken, J. P., Weinstein, Rubin and Kooper, JJ., concur.