■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIE GONZALEZ, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Pincus, J.), rendered November 6, 1986, convicting him of murder in the second degree (three counts), and burglary in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

Two men died as a result of multiple stab and slash wounds inflicted during a burglary of a factory. The defendant admitted to police that he was the lookout for two companions who actually entered the factory to steal merchandise and, afterward, told him how the two men in the factory were killed because they would not cooperate. In a videotaped statement the defendant described to police how his companions pounced upon the victims, bound them, and repeatedly stabbed one of them to force them to tell where money was hidden and, then, when that victim died, decided to kill the other to eliminate him as a witness to the crimes.

Viewing the evidence in the light most favorable to the prosecution *(see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

We reject the defendant's contention that he established the affirmative defense to felony murder as a matter of law. The defendant admitted that he knew that the victims would be in the factory and knew that they would resist, based on his previous attempt to steal their merchandise. He also knew that one of his companions was "nervous", "crazy" and had a bad temper, and that, if this companion met the men working in the factory, he would have to "scare" them. Because of these admissions, the record does not support a finding that, as a matter of law, the defendant had no reasonable ground to believe that his companion intended to engage in conduct

likely to result in death or serious physical injury *(see,* Penal Law § 125.25 [3]; *People v Brailsford,* 106 AD2d 648).

In any event, the jury was not required to automatically credit the exculpatory portions of the defendant's admissions *(see, People v Dlugash,* 41 NY2d 725, 736; *see also, People v Kennedy,* 47 NY2d 196, 201). The jury could properly discredit the defendant's statement that he was only a lookout and conclude that he was present, based on his detailed description of the murders, particularly his knowledge that cloth strips were cut to be used to tie the victims, and his graphic description of the victim's expression as he was being stabbed repeatedly *(see, People v Shedrick,* 106 AD2d 895, *affd* 66 NY2d 1015). The "lookout" role was further undermined by the defendant's earlier statement to police in which he claimed that he had no role whatsoever in the crimes, but had learned of them from a participant *(see, People v Benzinger,* 36 NY2d 29, 33-34).

Finally, we reject the defendant's contention that the proof was legally insufficient to support the conviction for intentional murder. Although the record does not support a finding that the defendant himself physically stabbed the victims, his presence while each victim was stabbed about 20 times supports the inference that he was aware of his companion's homicidal intentions and shared the intent to kill the second victim *(see, People v Bell,* 94 AD2d 894, *affd* 63 NY2d 796; *cf., People v La Belle,* 18 NY2d 405, 413). Kooper, J. P., Sullivan, Harwood and Balletta, JJ., concur.